## EMPLOYERS' LIABILITY ASSUR. CORPORATION, Limited, v. JOHNSON.
### No. 13172.

Court of Civil Appeals of Texas. Fort Worth.

June 7, 1935.

Rehearing Denied July 12, 1935.

W. B. Handley and C. J. Shaeffer, both of Dallas, for appellant.

E. W. Napier, of Wichita Falls, for appellee.

BROWN, Justice.

Appellee, Johnson, brought suit against appellant, Employers' Liability Assurance Corporation, in the district court of Wichita county, under the Workmen's Compensation Act (Vernon's Ann. Civ. St. art. 8306 et seq.), to recover for disability alleged to have been caused by hernias re-

ceived while in the course of his employment by the Stanolind Pipe Line Company.

He alleged that in December, 1932, he fell from a pipe line while crossing a creek and received injuries to his abdomen of a nature not known to him, but which resulted in no disability at the time, and in none since such fall, until July 17, 1933, when he stumbled, while carrying a heavy pipe, in such a way as to injure him internally, causing a left and right inguinal hernia, and other abdominal injuries, the nature of which he does not know, but all of which have totally disabled him since the accident.

The substance of his pleading is that his first accident caused a hernia in the upper portion of his abdomen, which was aggravated or which became a disabling factor by his last accident, and that he immediately suffered the left and right inguinal hernia from the last accident.

He alleged that he filed no claim after the first accident because he did not know what injury he had sustained and because he was not then disabled thereby.

Appellant answered that, if appellee actually sustained any injury that was compensable and found to be so, such was occasioned by hernia; that the trial court should order the appellee to submit to a medical examination, as is provided by law; that such an examination by physicians, if made, will show that it would not be more than ordinarily unsafe for appellee to undergo an operation; that such operation would cure appellee's injury; and appellant tendered, by pleading, such operation, and prayed that the issues of whether or not appellee's hernias were compensable, and whether or not it would be more than ordinarily unsafe for appellee to submit to an operation, and the report of the examining surgeons, be first gone into.

Appellee filed a first supplemental petition excepting to appellant's tender of an operation on the ground that it comes too late and is prejudicial to appellee's rights.

During the trial of the case, before a jury, appellee expressed a willingness to undergo an operation for hernia, and appellant then tendered the operation; and, at the conclusion of the introduction of evidence, appellant duly filed and presented to the court a motion setting forth the facts and calling specific attention to the fact that appellant tendered the operation in open court, and in such motion again tendered the operation, and prayed the trial court to suspend further action on the case other than to order appellee to undergo the operation and await the outcome of the operation; and, in the alternative, if appellee refuses to undergo the operation, that the court then appoint physicians to examine appellee and report back to the court their finding of whether or not it would be ordinarily unsafe for appellee to undergo the operation for hernia, and, if such physicians find that it is not more than ordinarily unsafe for appellee to undergo the same, that appellee be directed to submit to the operation.

The trial court permitted appellee, over appellant's objection, to file a trial amendment in which he asserted that the tender of the operation was not made in good faith but for delay and with no intention of carrying same out.

Appellant was put to trial upon the entire case, the trial court submitting special issues covering the sustaining by appellee of a hernia in December, 1932; whether he was engaged in the course of his employment at the time; whether the hernia appeared immediately following the injury; whether it was accompanied by pain; whether appellee suffered disability therefrom; when the disability began; whether it is total; whether it is permanent; whether appellee, on July 17, 1933, sustained a left hernia; whether during his employment; whether it appeared suddenly; whether it existed in any degree before his injury; whether it was accompanied by pain; similar issues were submitted concerning a right hernia; whether appellee suffered disability from each hernia; when such disability began; whether it was total; whether it is permanent; whether appellee's disability is caused by his injuries; the amount of his weekly wage; issue covering a lump sum settlement; whether appellee acted as a reasonably prudent person would concerning giving notice of his injury sustained in 1932, and in filing his claim thereupon; whether appellee has been willing to undergo an operation ever since his foreman advised him he could not work without an operation; whether appellee is suffering from a disease, or other physical condition rendering the operation more than ordinarily unsafe; whether the tender of an operation was made in good faith.

All objections to the charge were overruled.

The jury answered all issues favorably to appellee, but finding that no disability arose from the first injury and hernia until the second injury was sustained; finding that appellee's weekly wage was $35.30.

On the verdict the trial court rendered judgment for appellee against appellant for $6,463.85, with 6 per cent. interest from July 17, 1933.

The compensation insurance carrier has appealed.

Section 12b of article 8306, Workmen's Compensation Law of Texas, covers the matter of claims arising from hernia, and is as follows:

"In all claims for hernia resulting from injury sustained in the course of employment, it must be definitely proven to the satisfaction of the board:

"1. That there was an injury resulting in hernia.

"2. That the hernia appeared suddenly and immediately following the injury.

"3. That the hernia did not exist in any degree prior to the injury for which compensation is claimed.

"4. That the injury was accompanied by pain.

"In all such cases where liability for compensation exists, the association shall provide competent surgical treatment by radical operation. In case the injured employee refuses to submit to the operation, the board shall immediately order a medical examination of such employee by a physician or physicians of its own selection at a time and place to be by them named, at which examination the employee and the association, or either of them, shall have the right to have his or their physician present. The physician or physicians so selected shall make to the board a written report, signed and sworn to, setting forth the facts developed at such examination and giving his or their opinion as to the advisability or non-advisability of an operation. If it be shown to the board by such examination and such report thereof and the expert opinions thereon that the employee has any chronic disease or is otherwise in such physical condition as to render it more than ordinarily unsafe to submit to such operation he shall, if unwilling to submit to the operation, be entitled to compensation for incapacity under the general provisions of this law. If the examination and the written report thereof and the expert opinions thereon then on file before the board do not show to the board the existence of disease or other physical condition rendering the operation more than ordinarily unsafe and the board shall unanimously so find and so reduce its findings to writing and file the same in the case and furnish the employee and the association with a copy of its findings, then if the employee with the knowledge of the result of such examination, such report, such opinions and such findings, thereafter refuses to submit within a reasonable time, which time shall be fixed in the findings of the board, to such operation, he shall be entitled to compensation for incapacity under the general provisions of this law for a period not exceeding one year.

"If the employee submits to the operation and the same is successful, which shall be determined by the board, he shall in addition to the surgical benefits herein provided for be entitled to compensation for twenty-six weeks from the date of the operation. If such operation is not successful and does not result in death, he shall be paid compensation under the general provisions of this law the same as if such operation had not been had; other than in determining the compensation to be paid to the employee, the board may take into consideration any minor benefits that accrued to the employee by reason thereof or any aggravation or increased injury which accrued to him by reason thereof.

"If the hernia results in death within one year after it is sustained, or the operation results in death, such death shall be held a result of the injury causing such hernia and compensated accordingly under this law. This paragraph shall not apply where the employee has wilfully refused to submit to an operation which has been found by the examination herein provided for not to be more than ordinarily unsafe."

Section 12c is as follows: "If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury."

Medical experts are agreed that in the great majority of cases hernia can be repaired or cured.

The lawmaking bodies of Texas evidently had this in mind when the provi-

sions above quoted were written into the law.

When it is established that liability for compensation exists by reason of the employee sustaining a hernia, during the course of his employment, it is incumbent upon the insurance carrier to "provide competent surgical treatment by radical operation."

If the employee submits, the trial court must immediately order a medical examination by a physician, or physicians, of the court's selection, at which examination the injured employee may have his physician present. The physician selected must make a written report, under oath, "setting forth the facts developed at such examination and giving his or their opinion as to the advisability or non-advisability of an operation."

If it be disclosed by the examination, the report and the expert opinions that the injured employee "has any chronic disease or is otherwise in such physical condition as to render it more than ordinarily unsafe to submit to such operation he shall, if unwilling to submit to the operation, be entitled to compensation for incapacity under the general provisions of the Workmen's Compensation Law; but, "if the examination and the written report thereof and the expert opinions thereon then on file before the board [court] do not show * * * the existence of disease or other physical condition rendering the operation more than ordinarily unsafe * * * then if the employee with the knowledge of the result of such examination, such report, such opinions and such findings, thereafter refuses to submit within a reasonable time, which time shall be fixed in the findings of the board [court], to such operation, he shall be entitled to compensation for incapacity under the general provisions of this law for a period not exceeding one year." If the injured employee submits to the operation and it is successful, he is entitled to compensation for twenty-six weeks after the operation, in addition to the surgical benefits; if the operation is not successful and does not result in death, the employee is entitled to be paid compensation under the general provisions of the law "the same as if such operation had not been had."

It is apparent that these provisions are for the protection and benefit of both the injured employee and the insurance carrier, and they should not be disregarded, when invoked by either party.

From the letters introduced in evidence, the pleadings submitted, and the open statements and declarations upon the part of the attorneys for the insurance carrier, we are of the opinion that the question of liability for compensation is definitely settled and that the insurance carrier admits liability and has tendered an operation.

The appellee on the witness stand expressly stated that he was willing to undergo the operation. Under such circumstances, the trial court should have suspended further hearing on the merits and have entered an order requiring the insurance carrier to provide the operation, and should have continued the cause to await the outcome.

The trial court refused to apply the law to the case, as it is plainly written. This he should not have done, as his actions and ruling have deprived the insurance carrier of valuable rights vouchsafed to it by the law.

We feel that the better practice in hernia cases is the issue of whether or not the injured employee is willing to submit to an operation should be brought to the attention of the trial court before a trial upon the merits, in order that the willingness, or unwillingness, of the employee to submit to an operation may be made a matter of record, and the trial court be given the facts upon which he may enter an order either requiring the insurance carrier to furnish the operation, or an examination of the employee for the purpose of determining his condition and the advisability of an operation, in case the employee either declines to submit to the operation or refuses to commit himself upon the issue. Such preliminary issues should be brought to the attention of the trial court by proper pleading and motion prior to a hearing upon the merits.

Under the record, as made, we do not consider it necessary to review the many propositions presented.

The judgment of the trial court is reversed and the cause remanded for a new trial consistent with the conclusions reached.

Reversed and remanded.